1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

TIMOTHY C. MERCER,

          Plaintiff,

         v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

         Defendant.

No.  2:13-CV-03032-JTR

ORDER GRANTING PLAINTIFF'S
MOTION  FOR SUMMARY
JUDGMENT

      **BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF Nos.  14, 25.   Attorney D. James Tree represents Plaintiff, and Special Assistant United States Attorney Thomas M. Elsberry represents the Commissioner of Social Security (Defendant).  The parties have consented to proceed before a magistrate judge.  ECF No. 6.  After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

**JURISDICTION**

      On April 27, 2009, Plaintiff filed an application for supplemental security income, alleging disability beginning February 17, 2002.  Tr. 18; 65.  Plaintiff filed

a previous application on May 20, 2005, for supplemental security income that was denied by an administrative law judge on August 29, 2008. Tr. 18. In the current claim, Plaintiff reported that he was unable to work due to permanent vertigo, neck pain, memory loss, migraines, restless leg syndrome, hernia, poor concentration. Tr. 137. Plaintiff also stated that he is "dizzy all the time and I have migraines constantly." Tr. 137. Plaintiff's claim was denied initially and on reconsideration, and he requested a hearing before an administrative law judge (ALJ). Tr. 64-111.

On November 30, 2011, ALJ Richard A. Say held a hearing, at which vocational expert Jennifer Gaffney, and Plaintiff, who was represented by counsel, testified. Tr. 32-53. At the hearing, Plaintiff amended his onset date to September 1, 2008. Tr. 36. On December 8, 2011, the ALJ issued a decision finding Plaintiff not disabled. Tr. 18-27. The Appeals Council declined review. Tr. 1-3. The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties and thus, they are only briefly summarized here. At the time of the hearing, Plaintiff was 53 years old, single, and living in a mobile home with his youngest daughter. Tr. 39. He quit high school in the 11th grade, and later obtained a GED. Tr. 38.

Plaintiff's past work includes as a truck driver, gas station attendant, hand packager, and janitor. Tr. 49. Plaintiff occasionally works part-time at Dairy Queen, where his friend is manager. Tr. 39; 43. He said he has trouble with dropping things, and one day at Dairy Queen he lost his grip and spilled five gallons of oil. Tr. 47.

Plaintiff testified that dizziness and headaches kept him from working regularly. Tr. 40. After he had his teeth removed and began receiving trigger point injections, Plaintiff's daily headaches diminished to about two headaches per week. Tr. 40. Plaintiff said that his dizziness leaves him disoriented and

imbalanced, and unable to focus.  Tr. 41.   Plaintiff also testified that when he has headaches, they last about half the day, and he has to lie down in a quiet, dark room.  Tr. 45.  On Plaintiff's function report, he stated that his daily activities consisted of watching the news, napping, tidying up the house and preparing dinner.  Tr. 148.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).   The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ.  *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the ALJ's determination is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

A prior final determination that a claimant is not disabled creates a

presumption of continuing non-disability with respect to any subsequent unadjudicated period of alleged disability. *Taylor v. Heckler,* 765 F.2d 872, 875 (9th Cir. 1985). A claimant may overcome this burden by proving "changed circumstances," such as the existence of an impairment not previously considered, an increase in the severity of an impairment, or a change in the claimant's age category. *See Schneider v. Commissioner*, 223 F.3d 968, 973 (9th Cir. 2000).

## SEQUENTIAL PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); see *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since September 1, 2008, his amended onset date, through his date of last insured on December 31, 2009. Tr. 22. At step two, the ALJ found Plaintiff suffered from "severe impairments related to headaches and vertigo." Tr. 22. At step three, the ALJ found Plaintiff's impairments, alone and in combination, did not meet or medically equal one of the

listed impairments.  Tr.  23.  The ALJ found that Plaintiff had the residual

functional capacity to perform light work "with some nonexertional limitations"[1]

and the ALJ specified the following limitations.  "[h]e could never climb ladders,

ropes or scaffolds.  He could occasionally climb ramps and stairs, balance, stoop,

kneel, crouch, and crawl.  He should have avoided [sic] concentrated exposure to

hazards."  Tr. 23.

The ALJ found that Plaintiff is unable to perform past relevant work.  Tr. 25.

Considering Plaintiff's age, education, work experience and residual functional

capacity, the ALJ concluded that jobs existed in significant numbers in the national

economy that Plaintiff could perform, such as deli worker, office helper, and

cashier.  Tr. 27.  As a result, the ALJ found that Plaintiff was not disabled.  Tr. 27.

## ISSUES

Plaintiff contends that the ALJ erred by (1) rejecting Plaintiff's subjective

complaints; (2) rejecting the opinions of Plaintiff's treating and examining medical

providers; and (3) failing to meet his step five burden.  ECF No. 14 at 9-10.

## A.    Credibility

Plaintiff contends that the ALJ erred by finding Plaintiff had little

credibility.  ECF No. 14 at 18.  Specifically, Plaintiff argues that the ALJ failed to

provide clear and convincing reasons for rejecting his subjective complaints, and

erred by concluding that Plaintiff's daily activities were inconsistent with his

complaints.  ECF No. 14 at 19.  Also, Plaintiff contends that the ALJ failed to

explain how Plaintiff's limited activities were inconsistent with his symptom

complaints.  ECF No. 14 at 19.

The ALJ is responsible for determining credibility.  *Andrews*, 53 F.3d at

1039.  Unless affirmative evidence exists indicating that the claimant is

---

[1]While the ALJ indicates that Plaintiff has nonexertional limitations, he

inexplicably fails to specify any nonexertional limits in Plaintiff's RFC.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 5

malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996). The ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan,* 903 F.2d 1229, 1231 (9th Cir. 1990). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998), quoting *Lester*, 81 F.3d at 834. If objective medical evidence exists of an underlying impairment, the ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. *See Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991).

To determine whether the claimant's testimony regarding the severity of the symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *See, e.g., Fair v. Bowen, 885 F.2d 597, 602-04 (9th Cir. 1989)*; *Bunnell*, 947 F.2d at 346-47.

In determining a claimant's credibility, an ALJ may consider, among other factors, inconsistencies between the claimant's testimony and the claimant's daily activities, conduct and/or work record. *Light v. Social Sec. Admin*., 119 F.3d 789, 792 (9th Cir. 1997).

In this case, the ALJ found Plaintiff was not credible because, despite his continuing complaints of headache and vertigo, the evidence revealed some of his symptoms had improved. Tr. 24. While the record establishes that Plaintiff's debilitating headaches have decreased from daily occurrences to thrice-weekly occurrences, that fact does little to undermine Plaintiff's contention that he cannot sustain full time work. The vocational expert testified that an individual who

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 6

missed four or more days of work per month would be unable to sustain
employment.  Tr. 51.  If Plaintiff experienced three debilitating headaches per
week, he would likely miss more than three days per month of work.

Additionally, the ALJ mischaracterized Plaintiff as "active," based upon
Plaintiff's carrying of firewood, helping unload a 300-gallon tank, and carrying
five gallons of oil at Dairy Queen.  Tr. 24.  On April 27, 2011, Plaintiff carried
split logs of firewood, one log at a time, over a distance of only five feet.[2]  Tr. 532.
However, immediately after this attempt, Plaintiff sought medical attention
because he experienced "severe back pain."  Tr. 532.  This very limited exertion,
which afterwards necessitated medical treatment, does not reasonably give rise to
an inference that Plaintiff was generally "active."

Plaintiff also sought medical attention on October 19, 2010, because he was
"helping his brother unload a 300-gallon tank off a truck, when it slipped, hit the
ground, and fell toward him."  Tr. 386.  The chart note fails to reveal if Plaintiff
had an active role in carrying or transporting the tank, or if he was simply
providing verbal directions.  The note reveals no probative information, and
Plaintiff's mere presence and purported "aid" to his brother does not lend rise to a
reasonable inference that Plaintiff was "active."

Finally, the ALJ cites Plaintiff's testimony that he was able to carry a five-
gallon container of oil, while at work, to establish that he is "active."  Tr. 24.
However, Plaintiff testified that he was actually *unable* to carry the container, and
he "just dropped the whole thing all over the floor … that was a mess."  Tr. 47.
Plaintiff's unsuccessful attempt at carrying a full five gallon container does not
give rise to a reasonable inference that he is engaged in an "active" lifestyle.

---

[2]The medical record from Plaintiff's April 27, 2011, office visit indicates
Plaintiff told his provider that he was "carrying one log at a time to only five feet."
Tr. 432.

Moreover, the ALJ's reliance upon Plaintiff's daily activities as undermining his credibility is misplaced, and the record does not support the ALJ's characterizations of Plaintiff's activities.  For example, the ALJ noted that despite Plaintiff's complaints he suffers extreme dizziness, he "testified he still drives up to eight miles at a time and presently works 18 hours a week at a Dairy Queen restaurant performing cleaning tasks."  Tr. 24.

The record reveals that these activities – driving and working – are limited and Plaintiff requires accommodation.  For example, Plaintiff reported that the greatest distance he can drive is about eight miles, the distance from his house to Dairy Queen.  Tr. 41.  His wife had to drive him to the hearing because it was too far for him to drive.  Tr. 41.  Plaintiff's long-time friend is the manager of Dairy Queen.  Tr. 43.  He explained that when dizziness overcomes him, which happens about once per week during a work shift, another worker has to take over for him while he spends at least 30 minutes recovering in the back of the store.  Tr. 43.  After a shift at work, Plaintiff said his head hurts, he is dizzy, and he is "wiped out."  Tr. 43.  In sum, Plaintiff's limited ability to drive short distances and his ability to work part time, with accommodation, does not undermine Plaintiff's allegations of disabling complaints.

Finally, the ALJ noted that in Plaintiff's daily function report, dated June 8, 2009, Plaintiff denied problems with grooming and hygiene and indicated that he prepares daily meals, and he performs household chores including laundry and grocery shopping.  Tr. 25.  Plaintiff's function report revealed limited activities that included daily feeding of children, watering dogs, daily food preparation, laundry, "repairs," and grocery shopping once per week.  Tr. 149-51.  He reported he can no longer ride horses, swim, hunt, or go on long drives.  Tr. 152.  He is limited to fishing once per year.  Tr. 152.

The mere fact that a claimant engages in activities such as grocery shopping and driving a car does not detract from credibility as to overall disability.  "One

does not need to be utterly incapacitated in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Cooper v. Bowen,* 815 F.2d 557, 561 (9th Cir. 1987) (a claimant need not "vegetate in a dark room" to be eligible for benefits).

Moreover, daily activities may only form the basis of an adverse credibility finding if the claimant is able to spend "a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Fair*, 885 F.2d at 603. "In evaluating whether the claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's ability to work on a sustained basis. " *Lester*, 81 F.3d at 833. "Occasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability." *Id.* The ALJ's conclusion that Plaintiff is not credible is not supported by substantial evidence in the record. Plaintiff did describe a number of daily activities, but the descriptions, when reviewed in context of the whole record, show a person accomplishing limited tasks that would not translate to the ability to sustain gainful, continuous employment.

**B.    Medical Opinions**

As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Lester*, 81 F.3d at 830. Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Id.* Where the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

**1.    William Bothamley, M.D.**

Plaintiff contends the ALJ erred by relying upon invalid reasons for rejecting the opinions from Plaintiff's treating physician William Bothamley, M.D. ECF

No. 14 at 12-15.

On June 21, 2010, Dr. Bothamley completed a Medical Report form.  Tr. 392-93.  In that form, Dr. Bothamley noted that Plaintiff had to lie down during the day, on average, every other day up to two hours due to headaches, neck pain, vertigo and fatigue symptoms.  Tr. 392.  Dr. Bothamley opined that work on a continuous basis would cause Plaintiff's condition to deteriorate, and Plaintiff would likely miss four or more days per month due to his symptoms.  Tr. 393.

On March 4, 2011, Dr. Bothamley completed a second Medical Report form in which he noted that Plaintiff had to lie down for at least one hour per day, due to headaches, dizziness and vertigo.  Tr. 376-78.  Dr. Bothamley opined that work on a continuous basis would cause Plaintiff's condition to deteriorate, and Plaintiff would likely miss four or more days per month due to his symptoms.  Tr. 377.  Dr. Bothamley also opined that Plaintiff was limited to sedentary work.  Tr. 377.

The ALJ gave little weight to the assessments of Dr. Bothamley.  Tr. 25.  First, the ALJ asserted that no evidence established Plaintiff is limited to sedentary work, and that Dr. Bothamley's treatment records reveal Plaintiff's daily activities contradict the limitation to sedentary work.  Tr. 25.  As analyzed above, Plaintiff's daily activities were minimal and did not establish that Plaintiff was able to spend a substantial part of his day in activities that were transferable to a work setting.  *See Fair*, 885 F.2d at 603.  As such, Plaintiff's activities did not provide a reason to discount the physician's opinion.

The ALJ also found "there is no evidence that Dr. Bothamley has evaluated the claimant's cognitive function, indicating total reliance on the claimant's subjective complaints."  Tr. 25.  This assertion indicates that the ALJ failed to properly apply the regulation that favors giving greater weight to a treating physician's opinion because the treating relationship provides a greater opportunity to know and observe the patient overall, as an individual.  See 20 C.F.R. § ///

404.1527(d)(2); [3] *see also, Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). It is not clear what the ALJ believes is lacking related to Dr. Bothamley's evaluation of Plaintiff's cognitive functioning, but this premise is unfounded and does not support the ALJ's conclusion that Dr. Bothamley engaged in "an inordinate degree of reliance upon the subjective descriptions of symptomology and limitation set forth by [Plaintiff]." Tr. 25.  A treating physician opinion is afforded more weight because those physicians treat patients over time and have greater opportunity to observe the patient and know him or her as an individual. *Morgan*, 169 F.3d at 600.

Finally, the ALJ's speculation that Dr. Bothamley purposefully exaggerated his findings in order to assist Plaintiff is an invalid reason, and is not supported by the record, "[w]hile difficult to confirm, the possibility always exists that a doctor may express an opinion in an effort to assist an individual with whom he or she sympathizes for one reason or another.  As such, Dr. Bothamley's assessment are [sic] considered with caution." Tr. 25.

The purpose for which a report is obtained does not provide a legitimate basis for rejecting it.  *See Lester*, 81 F.3d at 832 (ALJ may not assume treating

_____

[3] 20 C.F.R. § 404.1527(d)(2) provides in part:

Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

doctors routinely lie in order to help their patients collect disability benefits); *Saelee v. Chater,* 94 F.3d 520, 523 (9th Cir. 1996); *Reddick,* 157 F.3d at 726-27 (ALJ erred in assuming that the treating physician's opinion was less credible because his job was to be supportive of the patient).  Nothing in this record suggests that Dr. Bothamley disbelieved Plaintiff's description of his symptoms, or that over the years, Dr. Bothamley relied on Plaintiff's descriptions more heavily than his own clinical observations.  As such, the ALJ's conclusion that Dr. Bothamley exaggerated his findings in order to assist Plaintiff obtain benefits is not a valid reason on which to discount the doctor's opinion.

Because the ALJ failed to provide valid reasons for discounting the opinion of Dr. Bothamley, this case must be remanded for a new evaluation of Dr. Bothamley's opinion.

**2.      Steven Woolpert, M.S., MHP**

Plaintiff contends that the ALJ erred by rejecting the opinions of Plaintiff's treating mental health provider, Steven Woolpert, M.S., MHP.  ECF No. 14 at 15-17.  Specifically, Plaintiff contends the ALJ's reasons for rejecting the opinion are invalid.

Mr. Woolpert regularly treated Plaintiff from July 2009, to February 2011.  Tr. 401-34.  Mr. Woolpert first saw Plaintiff in July 2009, shortly after Plaintiff's wife told him she wanted a divorce, and left him to care for two adolescent daughters.  Tr. 427-34.  On September 28, 2009, Mr. Woolpert observed Plaintiff exhibited symptoms of depression, such as change in sleep pattern, insomnia changes in appetite, depressed mood, feelings of worthlessness or guilt, loss of interested or pleasure.  Tr. 424.

On January 28, 2010, Mr. Woolpert noted that Plaintiff's pain and dizziness "greatly affects his functioning as well as his mood."  Tr. 418.  On September 9, 2010, Mr. Woolpert noted that Plaintiff looked weary from managing his physical problems and family stress, and Plaintiff reported that headaches and dizziness

significantly limited his activities.  Tr. 412.  On October 14, 2010, Plaintiff reported his dizziness was severe.  Tr. 411.  On December 14, 2010, Plaintiff said he had a lingering headache that made it difficult for him to concentrate, and Mr. Woolpert noted that Plaintiff appeared tired.  Tr. 409.

On January 3, 2011, Plaintiff said he had "turned" his back a few days prior and he appeared to be in pain, and Mr. Woolpert observed that Plaintiff had difficulty with his posture and with walking.  Tr. 408.  On February 15, 2011, Plaintiff reported his symptoms of dizziness and headaches were improving with medication.  Tr. 405.

On February 14, 2011, Mr. Woolpert completed a form Mental Residual Capacity Assessment.  Tr. 401-03.  He assessed Plaintiff with two marked limitations in the ability to maintain attention and concentration for extended periods and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  Tr. 402.  Mr. Woolpert assessed Plaintiff with three moderate limitations, including the ability to: (1) understand and remember detailed instructions; (2) carry out detailed instructions; and (3) perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances.  Tr. 401.  Mr. Woolpert stated that Plaintiff was receiving treatment for major depressive disorder, which continued to have significant limitations on his ability to concentrate, and his energy level needed to sustain tasks, as well as limitations on his memory and recall.  Tr. 403.

The ALJ rejected the opinions from Mr. Woolpert because (1) he was an "unacceptable medical source"; (2) no "objective evidence" existed to support allegations of cognitive deficits reported by Mr. Woolpert; and (3) Jay M. Toews, Ed.D., an examining physician, provided a contradictory opinion.  Tr. 23.

In evaluating the weight to be given to the opinion of medical providers, Social Security regulations distinguish between "acceptable medical sources" and

"other sources."  Acceptable medical sources include, for example, licensed physicians and psychologists, while other non-specified medical providers are considered "other sources."  20 C.F.R. §§ 404.1513(a) and (e), 416.913(a) and (e), and SSR 06-03p.  An ALJ is required to consider observations by non-acceptable medical sources as to how an impairment affects a claimant's ability to work. *Sprague,* 812 F.2d at 1232.  In determining the weight to give an opinion from an "unacceptable" source, the ALJ considers: the length of time the source has known the claimant and the number of times and frequency that the source has seen the claimant; the consistency of the source's opinion with other evidence in the record; the relevance of the source's opinion; the quality of the source's explanation of his opinion; and the source's training and expertise.  SSR 06-03p.

An ALJ must give reasons germane to "other source" testimony before discounting it.  *Dodrill v. Shalala,* 12 F.3d 915 (9th Cir. 1993).  To qualify as germane, a reason for disregarding the testimony of a lay witness must be more than a wholesale dismissal of all such witnesses as a group, but rather must be specific to the individual witness.  *Smolen*, 80 F.3d at 1288.

The ALJ's first reason for rejecting Mr. Woolpert's opinion was invalid because it amounts to a wholesale dismissal of all non-accepted medical providers.

Similarly, the ALJ's second reason for rejecting Mr. Woolpert's opinion because no "objective evidence" existed to support cognitive deficits is also invalid.  Tr. 23.  When rejecting opinion evidence, the ALJ must provide "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Reddick*, 157 F.3d at 725. The ALJ must do more than merely state his conclusions: "[h]e must set forth his own interpretations and explain why they, rather than the doctors', are correct."  *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  "Merely to state that a medical opinion is not supported by enough objective findings 'does not achieve the level of specificity our prior cases have required, even when the

objective factors are listed seriatim.'" *Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989), quoting *Embrey,* 849 F.2d at 421.  "Disability may be proven by medically-acceptable clinical diagnoses, as well as by objective laboratory findings." *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).  In this case, the ALJ failed to provide specific reasons, and instead provided a broad conclusion that no objective evidence existed to support the impairments.  As a result, this is not a valid reason upon which to disregard Mr. Woolpert's conclusions.

The ALJ's third reason for rejecting Mr. Woolpert's opinion relied upon the report from a July 24, 2008, evaluation by examining physician Jay M. Toews, Ed.D.  Tr. 23.  Jay M. Toews, Ed.D., examined Plaintiff, and produced a reported dated August 7, 2008.  Tr. 226-29.  Dr. Toews administered a brief mental status exam, and reported Plaintiff's thinking was coherent and based in reality, and Plaintiff's mood was neutral.  Tr. 228.  Dr. Toews reported "there was no indication of disequilibrium, balance problems, or indication of dizziness."  Tr. 228.  Dr. Toews also administered an MMPI-2, and he found the resulting profile "of dubious validity."  Tr. 228.  Dr. Toews opined that a high probability existed that Plaintiff over endorsed symptoms, and it was unlikely he was over-endorsing his symptoms in order to call attention to his psychic distress, but instead he was likely engaging in a deliberate effort to present as impaired.  Tr. 228.  Finally, Dr. Toews noted that Plaintiff's attention and concentration may be impaired, but "one cannot be certain."  Tr. 229.

Dr. Toews' report is of little probative value, because the single exam occurred prior to Plaintiff's previous denial of benefits, and thus does not relate to the period at issue in this case.[4]  Moreover, the ALJ must give weight to the

---

[4]The court notes Plaintiff's argument that Dr. Toews' opinion deserves little weight because Plaintiff provided "extensive evidence … regarding his lack of credibility as an examining doctor."  ECF No. 14 at 16.  While the court is

treating provider's subjective judgments in addition to the provider's clinical findings and interpretation of test results.   *Lester*, 81 F.3d at 830.   In this case, the ALJ erred by giving more weight to a one-time examining physician than to Plaintiff's treating medical provider.

In sum, the ALJ failed to provide valid reasons, supported by substantial evidence for rejecting the opinions of Mr. Woolpert, Plaintiff's treating mental health care provider, and on remand, the ALJ will reconsider Mr. Woolpert's opinion.

**C.   Step Five**

Plaintiff argues that the vocational expert's testimony was without value, because the ALJ posited an incomplete hypothetical.   ECF No. 14 at 20.   In light of the necessity for remand, the court will not address this contention, and the ALJ will make new step five findings on remand.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the court concludes the ALJ's decision is based on legal error, and requires remand.   On remand, the ALJ is directed to reevaluate Plaintiff's credibility and the medical opinions, and revise Plaintiff's RFC to specify nonexertional impairments.   The decision is therefore REVERSED and the case is REMANDED for further proceedings consistent with this opinion.   Accordingly,

**IT IS ORDERED**:

1.   Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED.**

2.   Defendant's Motion for Summary Judgment, **ECF No. 25**, is **DENIED.**

---

troubled by this allegation, under these circumstances, the court need not reach this issue.

3.      An application for attorney fees may be filed by separate motion. The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff, and the file shall be CLOSED.

DATED July 7, 2014.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE